**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| MICHAEL A. KEETON, an individual; on behalf of himself and all others similarly situated, | § § § § § § § | |
| Plaintiffs, | § § | |
| vs. | § § | CAUSE NO.: |
| CONVERGENT OUTSOURCING, INC., a Washington Corporation; LVNV FUNDING, a Delaware Limited Liability Company; and JOHN AND JANE DOES 1 NUMBERS THROUGH 25, | § § § § § § § | |
| Defendants. | § § | |

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT AND TEXAS FAIR DEBT COLLECTION PRACTICES ACT AND DEMAND FOR JURY TRIAL**

Plaintiff, MICHAEL A. KEETON ("Plaintiff" or "KEETON"), on behalf of himself and all others similarly situated, brings this action for the illegal practices of Defendants, CONVERGENT OUTSOURCING, INC. ("CONVERGENT") and LVNV FUNDING, LLC ("LVNV") (collectively "Defendants"), who, *inter alia*, used false, deceptive, and misleading practices, and other illegal practices, in connection with its attempts to collect an alleged debt from the Plaintiff and others. In support of his Class Action Complaint, Plaintiff says:

1.      Plaintiff, on his own behalf and on behalf of the class he seeks to represent, and demanding a trial by jury, brings this action for the illegal practices of the Defendants who collectively used false, deceptive, and misleading practices, and other illegal practices, in connection with their attempts to collect alleged debts from the Plaintiff and others. Plaintiff

alleges that the Defendants' collection practices violate the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* ("FDCPA") and Texas Debt Collection Practices Act, Tex. Fin. Code §§ 392, *et seq.* ("TDCPA").

2.     The FDCPA regulates the behavior of collection agencies attempting to collect a debt on behalf of another. The United States Congress found abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors, and has determined that abusive debt collection practices contribute to a number of personal bankruptcies, marital instability, loss of jobs, and invasions of individual privacy. Congress enacted the FDCPA to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote uniform State action to protect consumers against debt collection abuses. 15 U.S.C. § 1692(a) - (e).

3.     The FDCPA is a strict liability statute, which provides for actual or statutory damages upon the showing of one violation. In reviewing an FDCPA complaint, courts "must evaluate any potential deception in the letter under an unsophisticated or least sophisticated consumer standard, assuming that the plaintiff-debtor is neither shrewd nor experienced in dealing with creditors." *McMurray v. ProCollect, Inc.*, 687 F.3d 665 (5th Cir. 2012).

4.     To prohibit deceptive practices, the FDCPA, at 15 U.S.C. § 1692e, outlaws the use of false, deceptive, and misleading collection practices and names a non-exhaustive list of certain *per se* violations of false and deceptive collection conduct. 15 U.S.C. § 1692e(1)-(16). Among these *per se* violations are: false representations concerning the character, amount, or legal status of any debt, 15 U.S.C. § 1692e(2)(A); the threat to take any action that cannot legally be taken or that is not intended to be taken, 15 U.S.C. § 1692e(5); and the use of any false representation or

deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer, 15 U.S.C. § 1692e(10).

5.      To prohibit unconscionable and unfair practices, the FDCPA at 15 U.S.C. § 1692f, outlaws the use of unfair or unconscionable means to collect or attempt to collect any debt and names a non-exhaustive list of certain *per se* violations of unconscionable and unfair collection conduct. 15 U.S.C. §§ 1692f (1)-(8).

6.      The TDCPA, like the FDCPA, prohibits debt collectors from using deceptive, coercive, threatening, abusive, and other repugnant practices for the purpose of collecting a consumer debt. Tex. Bus. & Com. Code Ann § 17.50; *Cushman v. GC Services, L.P.*, 397 Fed. Appx. 24 (5th Cir. 2010)(discussing the "tie-in" provision between the TDCPA and deceptive practices Acts).

7.      The Plaintiff, on behalf of himself and all others similarly situated, seeks statutory damages, injunctive relief, attorney fees, costs, and all other relief, equitable or legal in nature, as deemed appropriate by this Court, pursuant to the FDCPA, TDCPA, and all other common law or statutory regimes.

8.      The Plaintiff, on behalf of himself and all others similarly situated, requests that he and the class members be awarded statutory, common law, or actual damages payable by the Defendant.

9.      This case involves an obligation, or an alleged obligation, primarily for personal, family, or household purposes, and arising from a transaction or alleged transaction. As such, this action arises out of "consumer debt" as that term is defined by Tex. Fin. Code § 392.001(2).

## II.  PARTIES

10.     KEETON is a natural person.

11.     At all times relevant to this complaint, KEETON has been a citizen of, and resided in, the City of Brownsville, Cameron County, Texas.

12.     At all times relevant to this complaint, CONVERGENT is a for-profit corporation existing pursuant to the laws of the State of Washington.

13.     CONVERGENT maintains its principal place of business at 800 SW 39th Street, City of Renton, King County, State of Washington.

14.     At all times relevant to this lawsuit, LVNV is a limited liability company existing pursuant to the laws of the State of Delaware.

15.     At all times relevant to this lawsuit, LVNV maintains its principal place of business at 625 Pilot Road, Suite 3, City of Las Vegas, Clark County, Nevada.

16.     Defendants, JOHN AND JANE DOES NUMBERS 1 THROUGH 25, are sued under fictitious names as their true names and capacities are yet unknown to Plaintiff. Plaintiff will amend this complaint by inserting the true names and capacities of these DOE defendants once they are ascertained.

17.     Plaintiff is informed and believes, and on that basis alleges, that Defendants JOHN AND JANE DOES NUMBERS 1 THROUGH 25 are natural persons and/or business entities all of whom reside or are located within the United States, and personally created, instituted and, with knowledge that such practices were contrary to law, acted consistent with and oversaw policies and procedures used by the employees of CONVERGENT and LVNV that are the subject of this Complaint. Those Defendants personally control the illegal acts, policies, and practices utilized by CONVERGENT and LVNV and, therefore, are personally liable for all of the wrongdoing alleged

in this Complaint.

### III.  JURISDICTION & VENUE

18.      Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d) and 28 U.S.C. §§ 1331, 1337.

19.      Supplemental jurisdiction for Plaintiff's state law claims arises under 28 U.S.C. § 1367.

20.      Declaratory relief is available pursuant to under 28 U.S.C. §§ 2201, 2202.

21.      Venue is appropriate in this federal district pursuant to 28 U.S.C. §1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred within this federal judicial district, and because the Defendants are each subject to personal jurisdiction in the State of Texas at the time this action is commenced.

### IV. FACTS CONCERNING THE PARTIES

22.      Approximately 10 years ago, Plaintiff allegedly incurred and defaulted on a financial credit card obligation to First Premier Bank. ("First Premier Obligation").

23.      The First Premier Obligation arose out of a transaction in which the money, property, insurance, or services that were the subject of the transaction were primarily for personal, family, or household purposes.

24.      At some point after Plaintiff's alleged default, the original creditor of the First Premier Obligation determined that the debt was uncollectable, and therefore decided to "charge-off" the debt.

25.      Creditors charge-off debts in accordance with federal regulations that permit the creditor to remove the debt from their financial records. *See* Victoria J. Haneman, *The Ethical Exploitation of the Unrepresented Consumer*, 73 Mo. L. Rev. 707, 713-14 (2008) ("a credit card

account is characterized as a 'charge-off' account (or worthless account for taxable purposes) when no payment has been received for 180 days."). These charged-off accounts are treated as a loss and the creditor receives a tax deduction under the Internal Revenue Code.

26.     Plaintiff is informed and believes, and on that basis alleges, that after concluding that the First Premier Obligation was in default, First Premier Bank charged-off the account and, together with hundreds or thousands of other charged-off open-ended consumer credit accounts, sold the debt to an unknown purchaser(s) of defaulted consumer debts.

27.     Defendants also contend that the First Premier Obligation is in default.

28.     The alleged First Premier Obligation is a "debt" as defined by 15 U.S.C. §1692a(5).

29.     The alleged First Premier Obligation is a "consumer debt" as defined by Tex. Fin. Code § 392.001(2).

30.     Plaintiff is, at all times relevant to this lawsuit, a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

31.     Plaintiff is, at all times relevant to this complaint, a "consumer" as that term is defined by Tex. Fin. Code § 392.001(1).

32.     Plaintiff is informed and believes, and on that basis alleges, that sometime prior to September 26, 2013, the creditor of the First Premier Obligation either directly or through intermediate transactions, assigned, placed, transferred, or sold the debt to LVNV for collection.

33.     LVNV is a purchaser of performing and non-performing consumer debts that are in default at the time the debts are acquired.

34.     LVNV collects, and attempts to collect, defaulted consumer debts incurred, or alleged to have been incurred, for personal, family, or household purposes on behalf of itself and other debt buyers using the U.S. Mail, telephone, and Internet.

35.     In connection with its debt servicing operations, LVNV routinely hires other debt collectors, such as CONVERGENT, to send dunning letters to consumers in an effort to collect money on the defaulted consumer debts LVNV acquires.

36.     LVNV is at all times relevant to this complaint, engaged in the act and/or practice of "debt collection" as that term is defined by Tex. Fin. Code § 392.001(5).

37.     LVNV is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

38.     LVNV is at all times relevant to this complaint, a "debt collector" as that term is defined by Tex. Fin. Code § 392.001(6).

39.     LVNV is, at all times relevant to this complaint, a "third-party debt collector" as that term is defined by Tex. Fin. Code § 392.001(7).

40.     LVNV is not a "creditor" as defined by 15 U.S.C. § 1692a(4).

41.     LVNV contends that Plaintiff defaulted on the First Premier Obligation.

42.     Plaintiff is informed and believes, and on that basis alleges, that sometime prior to September 26, 2013, and within the two-year period immediately preceding the filing of the complaint in this action, LVNV either directly or through intermediate transactions assigned, placed, or transferred the First Premier Obligation to CONVERGENT for collection.

43.     CONVERGENT collects, and attempts to collect, defaulted debts incurred, or alleged to have been incurred, for personal, family, or household purposes on behalf of creditors using the U.S. Mail, telephone, and Internet.

44.     CONVERGENT is, at all times relevant to this complaint, engaged in the act and/or practice of "debt collection" as that term is defined by Tex. Fin. Code § 392.001(5).

45.     CONVERGENT is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

46.     CONVERGENT is, at all times relevant to this complaint, a "debt collector" as that term is defined by Tex. Fin. Code § 392.001(6).

47.     CONVERGENT is, at all times relevant to this complaint, a "third-party debt collector" as that term is defined by Tex. Fin. Code § 392.001(7).

48.     On or about September 26, 2013, CONVERGENT mailed a collection letter concerning the First Premier Obligation, dated September 26, 2013 to Plaintiff, which Plaintiff received in the ordinary course of mail. ("9/26/2013 Letter"). A true and correct copy of the 9/26/2013 Letter is attached hereto as ***Exhibit A***, except that the undersigned counsel has, in accordance with Fed. R. Civ. P. 5.2, partially redacted the financial account numbers and Plaintiff's home address in an effort to protect Plaintiff's privacy.

49.      The 9/26/2013 Letter was sent, or caused to be sent, by persons employed by Defendants as a "debt collector" as defined by 15 U.S.C. § 1692a(6).

50.     The 9/26/2013 Letter was sent to Plaintiff in connection with the collection of a "debt" as defined by 15 U.S.C. § 1692a(5).

51.     The 9/26/2013 Letter is a "communication" as defined by 15 U.S.C. § 1692a(2).

52.     As of September 26, 2013, approximately 10 years had elapsed since the First Premier Obligation was charged off by the original creditor.

53.     The 9/26/2013 Letter states, *inter alia*, that if Plaintiff does "not pay the debt, LVNV Funding LLC may report or continue to report it to the credit reporting agencies as unpaid."

54.     In response to the 9/26/2013 Letter, Plaintiff did not pay Defendants and in response, LVNV did not do as threatened – that is, it did not report the First Premier Obligation to the credit reporting agencies as unpaid.

55.     Despite Defendants' threat, LVNV did not report the First Premier Obligations to the credit reporting agencies as unpaid because it was legally impermissible for it to do so.

56.     Pursuant to 15 U.S.C. § 1681c(a)(4), credit reporting agencies cannot legally report a debt charged off more than 7 years previously.

57.     After purchasing defaulted consumer debts, LVNV, through its agents, such as CONVERGENT, undertakes various means to collect these debts from consumers such as Plaintiff by, *inter alia*, engaging in a campaign sending thousands of dunning collection letters in the form attached hereto as ***Exhibit A***, which offer to "settle" a consumer's defaulted debt for a large "discount" that is only available for a limited time for the consumer to accept, and which falsely threaten LVNV will "report or continue to report [the debt] to the credit reporting agencies as unpaid" if the consumer declines to "settle" the debt by paying the amount demanded.

58.     Plaintiff is informed and believes, and on that basis alleges, that the Defendants have no legal right or basis to "report or continue to report [any debt] to the credit reporting agencies as unpaid" owed by Plaintiff or other similarly situated consumers in the State of Texas whose alleged debt, such as the First Premier Obligation, was charged off more than 7 years previously.

59.     LVNV has no legal right or basis to "report or continue to report" the First Premier Obligation or other consumer debts of the same vintage (i.e., more than 7 years old since the date of charge-off), to credit reporting agencies.

60.     Plaintiff is informed and believes, and on that basis alleges, that LVNV never had any intention of "report[ing] or continu[ing] to report" the First Premier Obligation or other consumer debts of the same vintage (i.e., more than 7 years old since the date of charge-off), to credit reporting agencies.

61.     Defendants' threat to report non-payment to credit reporting agencies is false, deceptive, and misleading because under the Fair Credit Reporting Act, a credit reporting agency cannot report a debt charged off more than 7 years previously; thus, threats to report or continue to report such debts is illegal. Furthermore, the references to credit reporting agencies are false, deceptive, and misleading because they tell the unsophisticated consumer that payment or nonpayment of the claimed debt may impact the consumer's credit rating, when that is not true.

62.     LVNV and CONVERGENT regularly attempt to collect defaulted consumer debts that were charged off more than 7 years previous to their collection efforts.

63.     CONVERGENT regularly sends letters to consumers in the State of Texas, in the form of *Exhibit A*, in an effort to collect defaulted debts that were charged off more than 7 years prior to the date it mails such letters.

64.     CONVERGENT regularly sends letters on behalf of LVNV to consumers in the State of Texas, in the form of *Exhibit A*, in an effort to collect defaulted debts that were charged off more than 7 years prior to the date it mails such letters.

65.     The 9/26/2013 Letter offers three settlement options for Plaintiff to resolve the First Premier Obligation, which range from 35% to 50% of the claimed amount all the way to paying the entire balance demanded.

66.     Upon reading the 9/26/2013 Letter, Plaintiff believed, as would the unsophisticated consumer, that his credit rating would be impacted if failed to "settle" the First Premier Obligation as demanded by Defendants.

67.     The 9/26/2013 Letter falsely implies that the First Premier Obligation may be reported to the credit reporting agencies.

68.     Nothing in the 9/26/2013 Letter disclosed that the First Premier Obligation that
LVNV was legally prohibited from reporting the debt – in any manner – to the credit reporting
agencies.

69.     It is the policy and practice of LVNV and CONVERGENT to send and cause the
sending of letters, in the form attached hereto as ***Exhibit A***, that seek to collect defaulted debts that
were charged off more than 7 years prior to the date it mails such letters.

70.     In early 2012, the FTC entered into a consent decree with Asset Acceptance, one
of the largest debt buyers in the United States, requiring that it disclose to consumers when it is
attempting to collect debts that are barred by the statute of limitations. *United States of America
(For the Federal Trade Commission) v. Asset Acceptance, LLC*, Case No. 8:12-cv-182-T-27EAJ
(M.D.Fla.).

71.     On October 1, 2012, the Consumer Financial Protection Bureau, which has taken
over much of the FTC's enforcement responsibility and has been granted rule-making authority
with respect to debt collection, the Federal Deposit Insurance Corporation, the Federal Reserve
Board, and the Office of the Comptroller of the Currency entered into consent orders with three
American Express-related entities requiring disclosure that debts they attempt to collect were time-
barred. 2012-CFPB-0002; 2012-CFPB-0003; 2012-CFPB-0004. The orders require that "the Bank
shall continue to provide disclosures concerning the expiration of the Bank's litigation rights when
collecting debt that is barred by the applicable state statutes of limitations...." (2012-CFPB-0002,
p. 6 of 35, 2012-CFPB-0003, p. 5 of 28).

72.     The October 1, 2012 orders further require disclosure of "all material conditions,
benefits and restrictions concerning any offer of settlement. . . ." (2012-CFPB-0002, p. 7 of 35,

2012-CFPB-0003, p. 6 of 28). Thus, the orders recognize that "settlement offers" that fail to disclose material information may be misleading.

73.     On January 30, 2013, the FTC issued its report, *The Structure and Practices of the Debt Buying Industry*, available at http://www.ftc.gov/os/2013/01/ debtbuyingreport.pdf. The report reaffirms FTC's position in the *United States of America v. Asset Acceptance, LLC*, No. 8:12-cv-182-T-27EAJ (M.D. Fla. 2012), *American Express Centurion Bank* (FDIC-12-315b, FDIC- 12-316k, 2012-CFPB-0002), *American Express Bank, FSB* (2012-CFPB-0003) and *American Express Travel Company, Inc.* (2012-CFPB-0004) cases, that a defendant may violate the FDCPA by sending a collection letter demanding payment of a time barred debt without disclosing that the debt was time barred.

74.     The report cites to a study (Timothy E. Goldsmith & Natalie Martin, *Testing Materiality Under the Unfair Practices Acts: What Information Matters When Collecting Time-Barred Debts?*, 64 Consumer Fin. L.Q. Rep. 372 (2010)) that establishes the disclosure that a debt is time barred in a debt collection letter is material to the consumer.

75.     Courts have also held that a debt collector's "settlement" offer made to consumers on a time-barred debt is misleading. *See e.g., McMahon v. LVNV Funding, LLC*, 744 F.3d 1010 (7th Cir. 2014).

76.     At least one Court has already held that LVNV's debt collection letters, which extend "settlement" offers to consumers concerning time-barred debts, are false, deceptive, and misleading as contemplated by the FDCPA. *See e.g., McMahon v. LVNV Funding, LLC*, 744 F.3d 1010 (7th Cir. 2014).

## V.  POLICIES AND PRACTICES COMPLAINED OF

77.     It is Defendants' policy and practice to engage in unfair and deceptive acts and

practices, in violation of 15 U.S.C. §§1692e, 1692e(2), 1692e(5), 1692e(10), and 1692f, as well as §§ 392.301(a)(8), 392.304(a)(8), and 392.304(a)(19), by sending consumers letters, such as *Exhibit A*, that offer to settle time-barred debts without disclosure of that fact.

78.     On information and belief the Defendants' collection letters, in the form attached as *Exhibit A*, number at least in the hundreds.

## VI.  CLASS ALLEGATIONS

79.     Plaintiff brings this claim on behalf of two classes, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2) and (3).

80.     The First Plaintiff Class consists of (a) all individuals with addresses in the State of Texas (b) to whom CONVERGENT sent a collection letter in substantially the same form as *Exhibit A* (c) which offers to "settle" a debt that was charged off more than 7 years before the date of the letter (d) and which states the current owner of the debt may report or continue to report the debt to credit reporting agencies if it is not paid, (e) which letter was sent during the one year prior to the filing of this action and ending 21 days thereafter.

81.     The Second Plaintiff Class consists of (a) all individuals with addresses in the State of Texas (b) to whom CONVERGENT sent a collection letter on behalf of LVNV in substantially the same form as *Exhibit A* (c) that offers to "settle" a debt that was charged off more than 7 years before the date of the letter (d) and that states LVNV may report or continue to report the debt to credit reporting agencies if it is not paid, (e) which letter was sent during the one year prior to the filing of this action and ending 21 days thereafter.

82.     The identities of all class members are readily ascertainable from the records of Defendants and those companies and entities on whose behalf they attempt to collects and/or have purchased debts.

83.     Excluded from the Plaintiff Classes are the Defendants and all officers, members, partners, managers, directors, and employees of the Defendants and their respective immediate families, and legal counsel for all parties to this action and all members of their immediate families.

84.     There are questions of law and fact common to the Plaintiff Classes, which common issues predominate over any issues involving only individual class members. The principal issue is whether the Defendants' written communications to consumers, in the form attached as ***Exhibit A***, violates 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(5), 1692e(10), and 1692f, and Tex. Fin. Code §§ 392.301(a)(8), 392.304(a)(8), and 392.304(a)(19).

85.     The Plaintiff's claims are typical of the class members, as all are based upon the same facts and legal theories.

86.     The Plaintiff will fairly and adequately protect the interests of the Plaintiff Classes defined in this complaint. The Plaintiff has retained counsel with experience in handling consumer lawsuits, complex legal issues, and class actions, and neither the Plaintiff nor his attorneys have any interests, which might cause them not to vigorously pursue this action.

87.     This action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community interest in the litigation:

(a)     **Numerosity:** The Plaintiff is informed and believes, and on that basis alleges, that the Plaintiff Classes defined above are so numerous that joinder of all members would be impractical.

(b)     **Common Questions Predominate:** Common questions of law and fact exist as to all members of the Plaintiff Classes and those questions predominate over any questions or issues involving only individual class members. The principal issue is

whether the Defendants' written communications to consumers, in the form attached as ***Exhibit A***, violates 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(5), 1692e(10), and 1692f, and Tex. Fin. Code §§ 392.301(a)(8), 392.304(a)(8), and 392.304(a)(19).

(c)    **Typicality:** The Plaintiff's claims are typical of the claims of the class members. Plaintiff and all members of the Plaintiff Classes have claims arising out of the Defendants' common uniform course of conduct complained of herein.

(d)    **Adequacy:** The Plaintiff will fairly and adequately protect the interests of the class members insofar as Plaintiff has no interests that are adverse to the absent class members. The Plaintiff is committed to vigorously litigating this matter. Plaintiff has also retained counsel experienced in handling consumer lawsuits, complex legal issues, and class actions. Neither the Plaintiff nor his counsel have any interests which might cause them not to vigorously pursue the instant class action lawsuit.

(e)    **Superiority:** A class action is superior to the other available means for the fair and efficient adjudication of this controversy because individual joinder of all members would be impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum efficiently and without unnecessary duplication of effort and expense that individual actions would engender.

88.    Certification of a class(es) under Rule 23(b)(2) of the Federal Rules of Civil Procedure is appropriate in that a determination that Defendants' written communications to Texas consumers, in the form attached as ***Exhibit A***, violates Tex. Fin. Code §§ 392.301(a)(8),

-15-

392.304(a)(8), and/or 392.304(a)(19) would permit Plaintiff and the Plaintiff Classes to obtain injunctive relief pursuant to Tex. Fin. Code § 392.403(a)(1).

89.     Certification of a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that the questions of law and fact common to members of the Plaintiff Classes predominate over any questions affecting an individual member, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

90.     Depending on the outcome of further investigation and discovery, Plaintiff may, at the time of class certification motion, seek to certify a class(es) only as to particular issues pursuant to Fed. R. Civ. P. 23(c)(4).

## VII. FIRST CAUSE OF ACTION
## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## (AGAINST ALL DEFENDANTS)

91.     Plaintiff realleges and incorporates by reference the allegations in the preceding paragraphs of this Complaint.

92.     Defendants violated the FDCPA. Defendants' violation, with respect to their written communications in the form attached as ***Exhibit A*** include, but are not limited to, the following:

    (a)     Using false, deceptive, and misleading representations or means in connection with the collection of any debt in violation of 15 U.S.C. § 1692e;

    (b)     Making false, deceptive, and misleading representations concerning the character, amount, or legal status of any debt in violation of 15 U.S.C. §1692e(2)(A);

    (c)     Making false threats to take action that cannot legally be taken and/or that is not intended to be taken in violation of 15 U.S.C. §§1692e and 1692e(5);

    (d)     Using false representations and/or deceptive means to collect or attempt to collect

any debt or to obtain information concerning a consumer in violation of 15 U.S.C. § 1692e(10); and

(a)   Using an unfair or unconscionable means to collect or attempt to collect any debt in violation of 15 U.S.C. § 1692f.

## VIII.  SECOND CAUSE OF ACTION
### VIOLATIONS OF THE TEXAS DEBT COLLECTION PRACTICES ACT
### (AGAINST ALL DEFENDANTS)

93.   Plaintiff realleges and incorporates by reference the allegations in the preceding paragraphs of this Complaint.

94.   Defendants violated Tex. Fin. Code § 392.301(a)(8) by sending written communications, in the form attached as ***Exhibit A*** include, that threaten to take an action prohibited by law – namely, by falsely threatening to report the First Premier Obligation to Credit Reporting Agencies as unpaid unless Plaintiff agreed to pay the debt.

95.   Defendants violated Tex. Fin. Code § 392.304(a)(8) by sending written communications, in the form attached as ***Exhibit A*** include, that make false, deceptive, and misleading statements regarding the character and extent of the debt they sought to collect.

96.   Defendants violated Tex. Fin. Code § 392.304(a)(19) by sending written communications, in the form attached as ***Exhibit A*** include, that make false, deceptive, and misleading representations and/or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

## IX. PRAYER FOR RELIEF

97.   WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and in favor of the Plaintiff Classes as follows:

A.   **For the FIRST CAUSE OF ACTION**:

(1)     An order certifying that the First Cause of Action may be maintained as a class pursuant to Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and the undersigned counsel to represent the Plaintiff Classes as previously set forth and defined *supra*;

(2)     An award of the maximum statutory damages for Plaintiff and the Plaintiff Classes pursuant to 15 U.S.C. § 1692k(a)(2)(B);

(3)     Attorney's fees, litigation expenses, and costs pursuant to 15 U.S.C. § 1692k(a)(3); and

(4)     For such other and further relief as may be just and proper.

B.     **For the SECOND CAUSE OF ACTION**:

(i)     An order certifying that the Second Cause of Action may be maintained as a class pursuant to Rule 23 of the Federal Rules of Civil Procedure and Tex Fin. Code § 392.403(a), and appointing Plaintiff and the undersigned counsel to represent the Plaintiff Classes as previously set forth and defined above.

(ii)     An award of actual damages for Plaintiff and the Plaintiff Classes, including all amounts paid on time-barred debts, pursuant to Tex Fin. Code § 392.403(a)(2) in an amount to be determined at trial;

(iii)     For injunctive relief for Plaintiff and the Plaintiff Classes pursuant to Tex. Fin. Code § 392.403(a)(1), including enjoining the Defendants from engaging in further violations of Chapter 392 of the Texas Finance Code as complained of herein;

(iv)     For declaratory relief pursuant to 28 U.S.C. §§ 2201, 2202 adjudicating that Defendants' collection conduct complained of herein violates the violates the TDCPA;

(v)     Attorney's fees, litigation expenses, and costs pursuant to Tex Fin. Code §
        392.403(b); and

(vi)    For such other and further relief as may be just and proper.

## X. JURY DEMAND

Plaintiff hereby demands that this case be tried before a Jury.

DATED:      July 25, 2014

                                        Respectfully submitted,

                                        *s/ Andrew T. Thomasson*
                                        Andrew T. Thomasson, Esq.
                                        Attorney-in-Charge
                                        NJ Bar No. 048362011; SDTX No. 2347873
                                        THOMASSON LAW, LLC
                                        101 Hudson Street, 21st Floor
                                        Jersey City, NJ 07302
                                        Telephone: (201) 479-9969
                                        Facsimile:  (855) 479-9969

                                        *Attorneys for Plaintiff, Michael A. Keeton, and all
                                        others similarly situated*

# EXHIBIT "A"

**Convergent**

ATERSO01
PO Box 1022
Wixom MI 48393-1022
CHANGE SERVICE REQUESTED

Convergent Outsourcing, Inc.
10750 Hammerly Blvd # 200
Houston, TX 77043
Mon-Fri 8AM-5PM
800-764-6702

Date: 09/26/2013
Creditor: LVNV Funding LLC
Client Account #: 46954█████
Convergent Account #: S-739█████
Original Creditor: First Premier Bank
Settlement In Full: $ 246.58

S335    14232████

Michael A Keeton

Brownsville TX 78521-5461

| | |
|---|---|
| Principal: | $ 411.60 |
| Interest: | $ 292.92 |
| Total Balance: | $ 704.52 |
| Interest Rate: | 6.00% |

Settlement Offer

Dear Michael A Keeton:

This notice is being sent to you by a collection agency. The records of LVNV Funding LLC show that your account has a past due balance of $ 704.52.

Our client has advised us that they are willing to settle your account for 35% of your total balance due to settle your past balance. The full settlement must be received in our office by an agreed upon date. If you are interested in taking advantage of this offer, call our office within 35 days of this letter. Your settlement amount would be $ 246.58 to clear this account in full. Even if you are unable to take advantage of this offer, please contact our office to see what terms can be worked out on your account. We are not required to make this offer to you in the future.

The law limits how long you can be sued on a debt. Because of the age of your debt, LVNV Funding LLC will not sue you for it. If you do not pay the debt, LVNV Funding LLC may report or continue to report it to the credit reporting agencies as unpaid.

Sincerely,

Convergent Outsourcing, Inc.

**THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. THIS COMMUNICATION IS FROM A DEBT COLLECTOR.**

**NOTICE: PLEASE SEE REVERSE SIDE FOR IMPORTANT CONSUMER INFORMATION.**

---

**3 CONVENIENT WAYS TO PAY:**

Pay Online: Email our office or pay your bill online with your credit/debit card or checking account at www.payconvergent.com. Your temporary identification number is: 13.7394045.514

Pay by Phone: Please call Convergent Outsourcing, Inc. at 800-764-6702. We offer check by phone, Western Union, and credit/debit card.

Pay by Mail: Send Payments to Convergent Outsourcing, Inc., PO Box 9004, Renton WA 98057-9004

PLEASE DETACH THE BOTTOM PORTION WITH YOUR PAYMENT. BEFORE MAILING, PLEASE ENSURE RETURN ADDRESS ON
↓↓ REVERSE SIDE APPEARS CORRECTLY THROUGH THE WINDOW OF THE REPLY ENVELOPE ↓↓          749ATERSO01S335D

---

Re: Michael A Keeton
Please respond by October 31, 2013

Date: 09/26/2013
Creditor: LVNV Funding LLC
Client Account #: 46954█
Convergent Account #: S-739████
Settlement In Full: $ 246.58
Total Balance: $ 704.52

Amount Enclosed: US _____


✓ **Select Your Plan:**


☐ OPPORTUNITY #1 - Lump Sum Settlement Offer of 35%:

Sincerely,
Convergent Outsourcing, Inc.

**THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.  THIS COMMUNICATION IS FROM A DEBT COLLECTOR.**

**NOTICE:  PLEASE SEE REVERSE SIDE FOR IMPORTANT CONSUMER INFORMATION.**

---

### 3 CONVENIENT WAYS TO PAY:

Pay Online: Email our office or pay your bill online with your credit/debit card or checking account at www.payconvergent.com.  Your temporary identification number is: 13.7394045.514

Pay by Phone:  Please call Convergent Outsourcing, Inc. at 800-764-6702. We offer check by phone, Western Union, and credit/debit card.

Pay by Mail:  Send Payments to Convergent Outsourcing, Inc., PO Box 9004, Renton  WA 98057-9004

PLEASE DETACH THE BOTTOM PORTION WITH YOUR PAYMENT   BEFORE MAILING. PLEASE ENSURE RETURN ADDRESS ON
⬇⬇ REVERSE SIDE APPEARS CORRECTLY THROUGH THE WINDOW OF THE REPLY ENVELOPE. ⬇⬇

749ATERSO01S335D

---

Re: Michael A Keeton
**Please respond by October 31, 2013**

Date: 09/26/2013
Creditor: LVNV Funding LLC
Client Account #: 46954▮▮▮▮
Convergent Account #: S-739▮▮▮
Settlement In Full: $ 246.58
Total Balance: $ 704.52

Amount Enclosed: US _____

✓ **Select Your Plan:**

☐ **OPPORTUNITY #1 - Lump Sum Settlement Offer of 35%:**
Enclosed is my payment of $ 246.58 (a 65% discount). My account is now satisfied in full.

☐ **OPPORTUNITY #2 - Settlement Offer of 50% & Pay Over 3 Months:**
Enclosed is my first payment of $117.42 towards the settlement balance of $352.26 (a 50% discount).

☐ **OPPORTUNITY #3 - Spread Your Payments Over 12 Months:**
Enclosed is my first payment of $58.71 towards the balance due of $ 704.52.

If we are calling you in error, please call 855-728-9701 or visit our website at www.convergentusa.com.

| PLEASE COMPLETE IF **PAYING** BY CREDIT CARD. | | |
|---|---|---|
| VISA ☐ | MasterCard ☐ | |
| CARD NUMBER | | EXP. DATE |
| CARDHOLDER NAME | | AMOUNT $ |
| CARDHOLDER SIGNATURE | | |

"If Options 2 or 3 Have Been Selected, Please Enter Monthly
Payment Date and Amount: _____ $_____

84000739404500000704520002465 8

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

---

Date:  09/26/2013
Creditor: LVNV Funding LLC
Client Account #: 46954███████
Convergent Account #: S-739███████

Settlement In Full: $ 246.58

Total Balance: $ 704.52

**New Address:**
Address: _____
City: _____ ST _____ Zip: _____
Daytime Phone: (_____) _____ - _____
Evening Phone: (_____) _____ - _____

S-739███████████
Convergent Outsourcing, Inc.
PO Box 9004
Renton  WA 98057-9004

Convergent

## PRIVACY NOTICE

This Privacy Notice is being provided on behalf of each of the following related companies (collectively, the "Sherman Companies"). It describes the general policy of the Sherman Companies regarding the personal information of customers and former customers.

| | | |
|---|---|---|
| Resurgent Capital Services L.P. | LVNV Funding, LLC | Ashley Funding Services LLC |
| Sherman Acquisition L.L.C. | PYOD LLC | SFG REO, LLC |
| Resurgent Capital Services PR LLC | Anson Street LLC | |

**Information We May Collect.** The Sherman Companies may collect the following personal information: (1) information that we receive from your account file at the time we purchase or begin to service your account, such as your name, address, social security number, and assets; (2) information that you may give us through discussion with you, or that we may obtain through your transactions with us, such as your income and payment history; (3) information that we receive from consumer reporting agencies, such as your creditworthiness and credit history, and (4) information that we obtain from other third party information providers, such as public records and databases that contain publicly available data about you, such as bankruptcy and mortgage filings. All of the personal information that we collect is referred to in this notice as "collected information".

**Confidentiality and Security of Collected Information.** At the Sherman Companies, we restrict access to collected information about you to individuals who need to know such collected information in order to perform certain services in connection with your account. We maintain physical safeguards (like restricted access), electronic safeguards (like encryption and password protection), and procedural safeguards (such as authentication procedures) to protect collected information about you.

**Sharing Collected Information with Affiliates** From time to time, the Sherman Companies may share collected information about customers and former customers with each other in connection with administering and collecting accounts to the extent permitted under the Fair Debt Collection Practices Act or applicable state law.

**Sharing Collected Information with Third Parties** The Sherman Companies do not share collected information about customers or former customers with third parties, except as permitted in connection with administering and collecting accounts under the Fair Debt Collections Practices Act and applicable state law.

